## CIRCUIT COURT OF LOUDOUN COUNTY

Plaza Village Townhouses
Unit Owners' Association

v.

Edward F. Younger, III, et al.

October 13, 1992

Case No. (Chancery) 13850

BY JUDGE JAMES H. CHAMBLIN

This cause is before the Court on the Motion for Summary Judgment ("Motion") filed herein by First American Bank of Virginia. I have considered the oral argument of counsel on September 4, 1992, as well as the written argument submitted subsequently by counsel in the form of Mr. Jacob's letter of September 11, 1992, with the enclosed copies of the Declaration of Plaza Village Townhouses, a Condominium, dated April 18, 1984, ("Declaration") and the Amendment to Declaration of the same Condominium dated October 22, 1986, ("Amendment to Declaration") and Mr. Diaz's letter of September 18, 1992.

For the reasons hereinafter set forth, the Motion is denied.

### I. *Facts*

At oral argument, Mr. Jacob, counsel for the complainant, Unit Owners Association of Plaza Village Townhouses, a Condominium, agreed that the facts recited in the Motion are accurate. He did not argue that there are material facts genuinely in dispute. Mr. Diaz, counsel for First American, at oral argument agreed that Plaza Village had not been given notice of the motion filed by First Ameri-

can in the bankruptcy court to reform the deed of trust. Also, counsel concede that the copies of the Declaration and Amendment to Declaration provided to the Court by Mr. Jacob are the applicable condominium documents for Plaza Village Townhouses. The essential facts are summarized below.

In 1986, Edward F. Younger, III, executed a deed of trust in favor of First American on each of Condominium Unit Numbers 110 through 114, Phase II, Plaza Village Townhouses. He had acquired title to the units as his sole and separate equitable estate. The units were subject to condominium assessments which under the Declaration constitute a lien upon each unit.

In May, 1990, Younger refinanced the debt secured by the aforesaid deeds of trust with First American. On May 4, 1990, a deed of trust was recorded on the five units securing a note payable to First American for $458,250.00. The deed of trust was executed by Edward F. Younger, III, Trustee, and it recites that the note was made by Edward F. Younger, III, Trustee. The note was actually executed by Edward F. Younger, III, Trustee, and Edward F. Younger, III, personally.

Younger became delinquent in the payment of his condominium assessments for Plaza Village. Instead of enforcing the lien for such assessments against Younger's units, Plaza Village sued Younger personally in this Court. On September 3, 1991, it obtained a judgment against Younger. The judgment was docketed in the Clerk's Office of this Court. On September 16, 1991, Plaza Village filed this suit to enforce its judgment lien on the five units. It made First American and the trustee under the prior deeds of trust parties defendant and alleged in the Bill of Complaint that the units were encumbered by such deeds of trust. First American filed an Answer and Cross-Claim seeking to reform the May 4, 1990, deed of trust on the ground of mutual mistake, i.e., the grantor should have been the true owner, Edward F. Younger, III, and not Edward F. Younger, III, Trustee.

On January 21, 1992, Younger filed a voluntary Chapter 7 bankruptcy petition. As a result, these proceedings were stayed. First American moved the bankruptcy court for reformation of the May 4, 1990, deed of trust and relief from the automatic stay. On April 8, 1992, the bankruptcy court entered a consent order granting relief from the automatic stay and directing Younger to execute "all documents necessary to correct and reform the deed of trust dated May 4, 1990, to reflect the intent of the parties that the Deed of Trust be

executed by Edward F. Younger, III, personally." Plaza Village was never given notice of the motion by First American in the bankruptcy court.

Younger complied with the consent order and reexecuted the deed of trust individually on July 17, 1992. It was re-recorded on July 21, 1992. Thereafter, First American foreclosed under the amended and re-recorded deed of trust and acquired the units at a foreclosure sale on August 13, 1992.

Since May, 1990, no other deeds of trust have been recorded against the five units.

This Motion was filed on August 28, 1992.

## II. *Conclusions of Law*

First American seeks summary judgment that it holds the units free and clear of all liens, claims and charges of Plaza Village. It argues that its May 4, 1990, deed of trust is an equitable mortgage or deed of trust superior to the subsequently docketed judgment lien, and that such deed of trust is superior to any claim of Plaza Village under the provisions of the Declaration and Amendment to Declaration. Each argument is addressed below.

### A. *Equitable Mortgage or Deed of Trust*

While I agree that the cases cited by First American, *Bensimer v. Fell*, 35 W. Va. 15, 12 S.E. 1078 (1891); *Atkinson v. Miller*, 34 W. Va. 113, 11 S.E. 1007 (1890); *Alexander & Co. v. Newton*, 43 Va. (2 Gratt.) 266 (1845), are authority for the proposition that a court of equity may correct a mistake of the scrivener in drawing a deed or may decree that a deed of trust lacking some legal formality creates an equitable lien, I do not feel that the facts of this case warrant such equitable relief.

I will assume that making Edward F. Younger, III, Trustee, the grantor of the May 4, 1990, deed of trust was a mutual mistake of all parties to the deed of trust, and that it was even a mistake on the part of the drafter of the deed of trust. I do not agree with First American that it is merely a mistake in describing the grantor's status. I assume this argument means that Younger was mistakenly designated as "trustee," when he should have been designated "homme sole." Although I can find no authority for it, I am of the opinion that in the eyes of the law Edward F. Younger, III, and Edward F. Younger, III, Trustee, are two separate and distinct persons or legal entities. My reason for this opinion is very simple, the long standing widespread

use of a trustee status to avoid personal individual liability. In other words, the grantor in the May 4, 1990, deed of trust could have been "John J. Jones" (a clearly different name from Edward F. Younger, III). The result would be the same.

This is not a case of a mere mistake such as the failure to set forth in a deed of trust that certain creditors are preferred over others as in *Alexander*. It is not the case of the lack of a legal formality such as a seal as in *Atkinson* or a case of the failure to join a formal party as in *Bensimer*. Here, very simply, the wrong person was named as the grantor in the May 4, 1990, deed of trust. In *Alexander* and *Bensimer* a title examiner would have discovered the deeds at issue because they would not have been outside the chain of title as the May 4, 1990, deed of trust is in this case.

The creation of the equitable lien and having the lien relate back to May 4, 1990, so that it would be superior to the September, 1991, judgment lien would perhaps be proper if it were not for the effect it would have on the rights of a third party, Plaza Village, a judgment lien creditor.

Unlike an innocent purchaser, a lien creditor's rights are not affected by notice outside of the record. *Neff v. Newman*, 150 Va. 203 (1928). A deed is void as to lien creditors until it is admitted to record whether or not the creditors know of the deed. *See* Parham, *A Virginia Title Examiner's Manual*, § 35–5. To create an equitable lien in this case because of matters outside of the land records (i.e., to create the equitable lien this Court would in effect have to rule that as far as the land records are concerned Edward F. Younger, III, Trustee, is the same as Edward F. Younger) would defeat the superiority of a creditor's lien because of matters outside the record (i.e., a mistake was made in naming the grantor in the May 4, 1990, deed of trust). Plaza Village's lien would not be affected even if it knew of the mistake. It can rely on matters of record.

For the foregoing reasons, this Court does not find that the May 4, 1990, deed of trust created an equitable lien superior to the rights of Plaza Village as a lien creditor.

B. *Effect of the Condominium Documents on Plaza Village's Rights*

Although Plaza Village may have chosen to pursue a law action against Younger instead of enforcing its assessment lien, the underlying claim was for condominium assessments. Counsel have pointed out to the Court several provisions of the Declaration and Amendment to the Declaration, and I have considered all of them.

Clearly the condominium documents show an intent that liens of first deeds of trust financing by an institutional lender are to be superior to the liens for assessments for maintenance and operation of the condominium. Article II.B.2 of the Declaration clearly provides that the assessment lien shall be a lien on the unit subordinate to a first deed of trust such as that claimed by First American. The same intent is shown in Article IX, Section 6, of the Bylaws.

First American asserts that it purchased the five units at the foreclosure sale free of the Plaza Village because of the provisions of Article VII, Section A.3, of the Declaration which provides, in pertinent part, as follows:

> A. *Rights of Mortgagees and Trustees*: Bona fide first and second mortgagees holding first and second mortgages secured by any Unit within the Condominium shall be entitled to the following rights *provided that such mortgagees shall have notified the Unit Owners Association of the fact that they hold such a mortgage . . . .*
>
> 2. The holder of any such mortgage shall be given written notification by the Unit Owners Association of any default . . . which is not cured within thirty (30) days.
>
> 3. The holder of any such mortgage which comes into possession of a Unit pursuant to the remedies provided in the mortgage, foreclosure of the mortgage, or deed . . . in lieu of forfeiture shall take the property *free of any claims for unpaid assessments or charges* against the mortgaged Unit which accrue prior to the time such holder comes into possession of the Unit . . . .

(Emphasis Added.)

Plaza Village argues that First American is not entitled to the rights set forth in Article VII of the Declaration because it did not notify Plaza Village that it held a first deed of trust on the units. Section A clearly provides that First American is not entitled to such rights unless it gave notice of holding the first deed of trust to Plaza Village. First American did not so notify Plaza Village. It is of no help to First American that no form or means of notice is prescribed because the law would provide that notice merely be by a means reasonably calculated to get notice to Plaza Village considering the purpose of the notice. First American also asserts that it would be inequitable for Plaza Village to claim it was without notice of First American's first deed of trust. Equity is not the issue. The issue is

whether or not Plaza Village had notice of First American's first deed of trust. There are no facts admitted for purposes of the motion that would support a finding that Plaza Village had notice of the deed of trust. Just because Younger was a declarant of the condominium in 1984 does not infer that he was still involved with the unit owners association in 1990 or later. A unit owner's knowledge cannot be imputed to the association. This is one reason for the requirement that the first mortgagee notify the association. Additionally, an association would not be expected to examine the land records as to the units. Further, the first page of the May 4, 1990, deed of trust references the Declaration. First American therefore, was on at least constructive notice of the obligation imposed by Article VII to notify Plaza Village of its first deed of trust.

Even if I were to agree with First American's argument that Plaza Village's attempt to enforce its judgment lien is the equivalent of asserting a claim for unpaid assessments or charges under Section A.3. of Article VII of the Declaration, it is of no help to First American because for reasons stated above, it cannot assert the rights of a first mortgagee under that Article and take the units at a foreclosure sale free of such claims.

First American also points out that Article IX, Section 5, of the Bylaws also requires Plaza Village to notify a first mortgagee of a unit whose assessments are delinquent for thirty days without a requirement that the mortgagee must have previously notified Plaza Village of its holding of the first mortgage. This is just an obligation of Plaza Village, and is in no way connected to the lien priority provisions of Article VII of the Declaration. Maybe First American has been damaged by the failure of Plaza Village to notify it of Younger's delinquent assessments, but that is not the issue before the Court.

Plaza Village had the right to pursue a personal action against Younger for the unpaid condominium assessments. It was not required to take advantage of only the condominium assessment lien enforcement procedure. The Declaration and the Bylaws clearly anticipate either procedure. In fact, Article IX, Section 4, of the Bylaws provides that Plaza Village can recover a money judgment without foreclosing or waiving the assessment lien. This allows Plaza Village to pursue its claim for unpaid assessments against Younger as any other judgment creditor limited only by the provisions of the condominium documents.

For the foregoing reasons, I am of the opinion that the condominium documents do not provide a basis for a finding that the lien of First American's deed of trust is superior to Plaza Village's judgment lien.