FRED B. WATKINS *v.* NORFOLK & WESTERN RAILWAY COMPANY *et al.*

*and*

A. J. YOUNG *v.* NORFOLK & WESTERN RAILWAY COMPANY *et al.*

(No. 9333)

Submitted September 29, 1942. Decided December 8, 1942.

*Ashworth & Sanders,* for plaintiffs in error.

*Crockett & Tutwiler,* for defendant in error Norfolk & Western Railway Company.

ROSE, JUDGE:

In two separate actions against the Norfolk & Western Railway Company and C. D. Trent by Fred B. Watkins and A. J. Young, respectively, on a trial by the court in lieu of a jury of the issues raised by a plea in abatement filed in each case by the railway company, the pleas were sustained and the actions dismissed, following which these writs of error were awarded.

The plaintiffs Watkins and Young are coal miners and members of a "burial committee for the colored" at the village of Helen in Raleigh County. C. D. Trent is an undertaker. On the 17th day of February, 1941, Trent was taking a body for burial through Mercer County into the State of Virginia. He was accompanied by Watkins and Young, who were riding with him in the seat of the ambulance. At or near the village of Arista in Mercer County, the ambulance and a train of the Norfolk & Western Railway Company, at the intersection of the Railway tracks and a public highway, known as West Virginia Route No. 10, collided; resulting in certain injuries to Watkins, Young and Trent. These three then instituted separate actions against the railway company in the Circuit Court of Raleigh County, claiming damages for their personal injuries thereby incurred. The railway company filed in each case a plea in abatement, setting up that it did not have any office or place of business, or officer or agent on whom process could be served, in Raleigh County, and did no business and had no property therein, and that the cause of action did not arise in that county; and stating further the location of its principal office and the counties of the State of West Virginia in which it did business and held

property, as well as the county in which the cause of action did arise. Thereupon, each of the three actions was dismissed by the court on motion of the plaintiffs, through their attorney of record on the 25th day of August, 1941.

On September 12, 1941, the present actions were instituted in the same court by Watkins and Young through other attorneys, but joining with the railway company as co-defendant the said Trent, who was, in fact, a resident of Raleigh County, and charging in the present actions that the injuries to these two plaintiffs were in fact caused by the joint and concurrent negligence of the two named defendants.

The defendant railway company again filed a plea in abatement in each case. By these pleas, the facts set up in the former pleas in abatement were repeated, but with the additional allegations that, after the dismissal of the former actions, these two plaintiffs, colluding and conniving with the defendant Trent changed the nature of their claims, which, in the former suits, had exonerated the defendant Trent from blame, so as now to charge him with negligence jointly and concurrently with the railway company, for the fraudulent purpose of giving the Circuit Court of Raleigh County, of which Trent was a resident, the appearance of jurisdiction, and further that the plaintiffs were estopped from charging Trent with fault, after having pleaded in the former actions that he was blameless. To these pleas, the plaintiffs replied denying the collusion and estoppel set up, and explaining their change of attorneys and the bringing of the new actions. Trent filed in each case a special plea on behalf of himself against the plaintiffs making the claim of estoppel against them based on their allegations in the former actions that he was free of negligence. The declarations and pleas in the two present cases being identical, with the exception of the names of the plaintiffs and the injuries pleaded, by agreement, the issues on the pleas in abatement were tried together by the court in lieu of a jury, resulting in the findings and judgments complained of.

On the trial, the railway company gave in evidence only the record in the former actions, consisting of the decla-

rations, pleas in abatement, orders, summonses and other papers therein. The plaintiffs introduced only oral testimony, consisting of that of their former attorney, and that of the plaintiff Watkins. This attorney testified that after making an engagement by telephone, Trent came to his office bringing Watkins and Young with him; that Trent then, in the presence of the other two, gave a detailed story of the accident, from which the witness concluded that each of the three had a right of action against the railway company, and the agreement was made to institute actions accordingly; that nothing was said as to where the actions should be brought; that the attorney's firm was of opinion that, on some grounds, not stated, the actions could be maintained in Raleigh County, and instituted them there; that the declarations were drawn so as to embody in legal form the facts imparted to the witness at this interview, but were never actually read by, or to, the plaintiffs, or either of them; that on the coming in of the pleas in abatement, the attorney for the plaintiffs became convinced that the Circuit Court of Raleigh County had no jurisdiction, and the cases were dismissed; that about this time, an offer of settlement, in some amount, was made to him for the plaintiffs; that he immediately went to see Watkins and Young at the village of Helen, where he talked with them for the first time without Trent's being present; that from this interview, he concluded that these two had also a right of action against Trent, but that the latter had no cause of action against the railway company; that he then reported his conclusions to Trent, who told him to take up the matter "with the insurance companies", by which he was covered; that the representatives of these companies declined to give consent to him to bring suit for Watkins and Young, whereupon, he withdrew from the cases and advised these plaintiffs to employ other attorneys. This witness further testified that he knew of no collusion between the present plaintiffs and Trent for the purpose of giving the Circuit Court of Raleigh County apparent jurisdiction, and assumed full blame for the error in bringing the original suits in Raleigh County.

The plaintiff Watkins testified that he and Young were present and heard Trent give the story of the accident to the former attorney, and that there was no disagreement by either himself or Young to that statement; that they were later advised by said attorney that they could not maintain their actions in Raleigh County and that he could not represent them in any action against Trent; that after they "found out that he had insurance—carried a heavy insurance," they were told by someone that they had a right of action against Trent. He denies categorically that he or Young ever agreed with Trent that they would not sue him, or that any collusive arrangement existed between these plaintiffs and Trent for the joining of the latter with the railway company as defendant for the purpose of maintaining the actions in Raleigh County.

We believe that this evidence is sufficient to sustain the action of the trial court. No claim is made that this former attorney did not correctly understand the facts as given him by Trent in the presence of the plaintiffs, or that he erred in drafting the first declarations. The change from cooperation with Trent to actions against him with no protest on his part; the shift, without explanation or attempt at justification, of the position of the plaintiffs from a claim in the first declarations that Trent was free from negligence to the present charge against him of specific acts of negligence; the decision to sue Trent "after we found out that he had insurance—carried a heavy insurance"; the failure to call Trent and Young as witnesses, although they are charged to have participated in the collusion; the complacency of Trent, and his apparent indifference as to whether he sues or is sued; the undenied misleading of their first attorney by the plaintiffs and Trent;—these matters in evidence tend strongly to support the pleas in abatement.

There are limits beyond which a party may not shift his position in the course of litigation. "Parties will not be permitted to assume successive inconsistent positions in the course of a suit or series of suits in reference to the same fact or state of facts." *MacDonald* v. *Long,* 100 W. Va. 551, 131 S. E. 252. But here we have more than a mere

shifting from one to another theory or legal contention. The change is to a wholly antithetical statement of a fundamental fact in the case. This may sometimes amount to an estoppel, and is always a very potent admission against interest. We need not decide whether the facts in this case rise to the finality of an estoppel; they are at least strong evidence of bad faith toward the court. A plaintiff will not be allowed thus to mislead his attorney or to trifle with a court for the purpose of having his trial in a place of his own selection or for any other purpose. This Court has said in *Webster* v. *Hurvitz,* 116 W. Va. 328, 180 S. E. 265, speaking through Judge Maxwell: "It is the basic right of every person not to be drawn away from the county of his residence to defend a suit against him, except *ex necessitate rei,* where there are two or more defendants residing in different counties. * * * And this is true *a fortiori* if there be collusion between him and the plaintiff. A plea in abatement which charges such collusion has serious bearing upon the administration of justice. * * * A sworn charge that there was fraud to establish venue should be sifted to the bottom, and, with such meritorious end in view, procedural rules should be liberally interpreted. Fraud should not be permitted to lurk behind a veil of strict construction or a fetish formalism." In the case of *Wolfe* v. *Shaw, Judge,* 113 W. Va. 735, 169 S. E. 325, this Court prohibited further proceeding in a case where fictitious jurisdiction was sought to be imposed on a court by the joinder of a defendant, as to whom the plaintiff had previously in another case testified she had no claim or cause of action. Other factors made that a stronger case than this. The evidence here would probably not sustain a writ of prohibition, but we consider it sufficient to justify the finding of the trial court that the allegations of the plea in abatement were sustained.

The order dismissing these actions will, therefore, be affirmed.

*Affirmed.*